## Ingram v. Ingram.

(Decided June 7, 1932.)

C. P. MOORE for appellant.

J. J. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Sarah Ingram brought this suit against George Ingram for divorce and alimony. Being denied relief, she appeals.

The parties were married on May 22, 1929, and lived together until January 26, 1930. At the time of the marriage appellant was 20 years old, and appellee was 37 years old. Appellant lived on a small tributary of Sexton's creek, called "Doolittle." Appellee lived on a farm with his mother some three miles distant. On their marriage they moved to the farm. Appellee was industrious, and appellant did her share of the household duties and other work. It was not long until disputes arose between appellant and appellee's mother as to the order in which the work should be done. Also there was complaint that appellant had failed to make up the mother's bed. In these altercations appellee appears to have sided with his mother. According to appellant, appellee threatened to whip her, kicked her out of bed on two occasions, and choked her on another. When she indicated a desire to move her things to appellee's home, he gave her to understand that he had no use for anything she had on "Doolittle." At that time she was expecting to become a mother, and during their conversations he indicated that he did not intend to provide her with a doctor or any one else to look after her during her confinement. During all this time he was short and crabbed with her. When he took her over to her mother's home, he said, "I have brought Sarah and her clothes over." Her mother replied, "That is all right." Appellee said she might stay all the time if she wanted to. Her mother replied, "All right, if you're tired of her, I'm not." On the other hand, appellee and his witnesses, including his brother and other relatives and friends who came to his home, say that he always treated appellant with great kindness, and that at no time did he ever kick or strike her or mistreat her in any way.

There was further evidence that appellee undertook on two or three occasions to effect a reconciliation. As to what occurred on these occasions the evidence is conflicting. When this occurred appellant did not know what to do, but at times was inclined to return to him if he provided her a separate home, but the conditions were never met, and at the time of the hearing they were still separated.

In view of the conflict in the evidence, it may be doubted if a case of cruel and inhuman treatment within the meaning of the statute was made out. However, section 2121, Kentucky Statutes, authorizes a divorce from bed and board not only for the causes mentioned in section 2117, Kentucky Statutes, but "for such other cause as the court in its discretion may deem sufficient." Passing the issue of personal violence, the following facts cannot be overlooked: Appellant's condition was such as to require the utmost consideration, even though at times she may not have had herself under perfect control. Instead of according her such consideration, she was made to feel that she was a subordinate in the household, and that in the disputes between her and appellee's mother she was to blame. Not only so, but he was cross and found fault with her on numerous occasions. When he took her to her old home, he told her mother that she might stay all the time if she wanted to. Though it be true that she was not altogether free from fault, little, if any, blame may be imputed to her because she left appellee's home and refused to return without assurances that the situation would be corrected. In the circumstances, we conclude that appellee's treatment of appellant was sufficient to authorize a divorce from bed and board, together with reasonable alimony, and a suitable allowance for the support and maintenance of the child, if living, to be fixed by the chancellor.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.